# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SEAN A. FLOWERS,

               Plaintiff,

v.

TRACY HALL, NIKOL
BURMEISTER, CODY LEIBSLE,
CINDY BARTER, JASON RALLS,
KIMBERLY LOEHRKE, ANGELA
THOMPSON, BENJAMIN CASTNER,
SCOTT HILL, DEREK DURANTE,
and SGT. MARTIN,

               Defendants.

Case No. 25-CV-393-JPS

**ORDER**

Plaintiff Sean A. Flowers, an inmate confined at Redgranite Correctional Institution, filed a pro se complaint under 42 U.S.C. § 1983 alleging that his Eighth Amendment rights were violated when he was not provided adequate medical treatment. ECF No. 1. On August 8, 2025, the Court screened the complaint and granted Plaintiff's motion to appoint counsel. ECF No. 17. On August 25, 2025, the Court appointed Attorney Alan Olson to represent Plaintiff. ECF No. 18. On September 22, 2025, Defendants filed a motion for partial summary judgment based on Plaintiff's failure to exhaust administrative remedies. ECF No. 22. On November 17, 2025, the Court granted Plaintiff's motion to amend the complaint. ECF No. 40. In that order, the Court indicated that once an amended complaint was filed, the Court would screen the amended complaint in accordance with 28 U.S.C. § 1915A(a), order Defendants to answer the amended complaint, deny the pending motion for summary

judgment based on exhaustion as moot, and issue a new deadline to raise all exhaustion issues together in a concise manner. This Order screens the amended complaint, ECF No. 41, and will issue new deadlines to move this case forward.

## 2. SCREENING THE AMENDED COMPLAINT

### 2.1 Federal Screening Standard

Under the Prison Litigation Reform Act, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether a complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or

the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

Plaintiff brings this case against Defendants Tracy Hall ("Hall"), Nikol Burmeister ("Burmeister"), Cody Leibsle ("Leibsle"), Cindy Barter ("Barter"), Jason Ralls ("Ralls"), Kimberly Loehrke ("Loehrke"), Angela Thompson ("Thompson"), Benjamin Castner ("Castner"), Scott Hill ("Hill"), Derek Durante ("Durante"), and Sgt. Martin ("Martin"). ECF No. 41 at 1–2.[1] Counsel for the Plaintiff filed the amended complaint and the Court therefore reiterates the allegations therein. *Id.* at 3–9.

On or around March 2024, Plaintiff underwent knee surgery followed by physical therapy, return doctor visits, medication, use of crutches, use of a wheelchair, and recovery expected to occur over a six-to-twelve-month period. Plaintiff was prescribed the use of a wheelchair for his knee condition. On March 25, 2024, Plaintiff wrote to HSU about increased swelling and numbness in his knee area. On March 26, 2024, Plaintiff told the HSU nurse about his numbness and swelling, who advised Plaintiff to find a balance between walking with crutches and being off his feet. On March 26, 2024, Plaintiff told Robert Bartz, physical therapist, about his increased swelling and numbness. Bartz told Plaintiff that to recover, he

---

[1]The Court has altered the spelling of Defendants' names based on their notice of appearance. ECF No. 20.

Case 2:25-cv-00393-JPS    Filed 06/16/26    Page 3 of 13    Document 42

should decrease the amount of time he is on his feet. On March 26, 2024, at approximately 4:30 p.m., Plaintiff went to the dining room for dinner and as he left, Sgt. Hall told Plaintiff he was not to use his wheelchair anymore and threatened to write a conduct report. On March 26, 2024, at 6:40 p.m., Plaintiff came out of his room and discovered that his wheelchair had been confiscated by Hall. When Plaintiff asked Hall for permission to speak with a Lieutenant and Psychological Services, she refused. Plaintiff wrote HSU and PSU informing them that his wheelchair had been confiscated. Plaintiff was late getting his bedtime medication because he had no wheelchair. Plaintiff also could not cook his food or get cups of water at night because he could not carry those items while walking with his crutches.

On March 27, 2024, Plaintiff left his room in the middle of the night and realized his wheelchair had been confiscated. Plaintiff left his room at 6:15 a.m. for breakfast and realized his wheelchair had been confiscated. On March 27, 2024, at 3:40 p.m., Sgt. Hall confiscated Plaintiff's wheelchair. On March 27, 2024, at approximately 5:20 p.m., Plaintiff received a conduct report by Sgt. Hall for using his wheelchair. The next day, Plaintiff made a statement on the conduct report. On March 29, 2024, Plaintiff met with Dr. Labby in HSU and informed her about his wheelchair being confiscated. Plaintiff also told Dr. Labby that he did not feel safe walking long distances with no support as his knee was still extremely swollen, numb, painful, and not strong enough. On March 30, 2024, Plaintiff wrote HSU informing them he was feeling a "burning, painful sensation along his incision" and "fluid" was coming from another incision.

On March 31, 2024, Plaintiff was called to HSU and met with Barter in regard to "burning, painful sensation along his incision" and "fluid" coming from another incision. Barter responded, "why are you writing

every single day about something?" to which Plaintiff responded, "the post-surgical paperwork I received said to 'contact HSU if you have any concerns.'" Barter responded, "we don't need to know about every little twinge." Barter's comments made Plaintiff afraid to report any symptoms for fear of consequences. Barter also told Plaintiff, "if you keep writing you must want to stay up here in the Infirmary where you'll stay for a year," and Plaintiff responded, "I'm just informing you of concerns like I was told, I've never had surgery before so I wanted to make sure everything is okay." Barter told Plaintiff to, "only write if you have three or more symptoms."

On April 4, 2024, Plaintiff had an x-ray of his knee. On April 5, 2024, Plaintiff received a note from Dr. Labby with the results of his x-ray. She said, "this showed a few abnormalities, specifically, there is some swelling in front of the knee." Plaintiff contacted HSU the same day asking how this information affects him, since he had complained of pain and increased swelling, in addition to him falling three times after surgery. Plaintiff was told to discuss this with PT on April 11, 2024, and at his telemedicine visit on April 25, 2024. On April 7, 2024, Burmeister issued a conduct report for Plaintiff's use of his wheelchair. On April 9, 2024, Plaintiff made a statement on Burmeister's conduct report. On April 8, 2024, Thompson responded to Plaintiff's information request about Barter's March 31, 2024 comments. She said, "no s/s of infection…," and "[Barter's] comments were not inappropriate." Thompson also failed to provide Plaintiff with medical care for his pain.

On April 9, 2024, Leibsle confiscated Plaintiff's wheelchair and said, "how many conduct reports do you have to get?" Plaintiff was not breaking any rule as he was in his room 5 minutes before the 4:10 p.m. count and his wheelchair was medically prescribed to him. On April 10, 2024, at 11:30

a.m., Plaintiff noticed "fluid" coming out of his knee for the second time. Plaintiff was seen by a nurse in HSU at 2:30 p.m. and was told the wound may be infected. The fluid was swabbed and sent to a lab. Plaintiff was also given some soap to cleanse the area to help prevent infection and was told to follow-up on April 12, 2024. On April 11, 2024, Plaintiff told the physical therapist about the fluid coming out of his incision. Plaintiff was given some additional exercises and patient care education. On April 12, 2024, Plaintiff was seen by a nurse in HSU about the fluid from his incision. Plaintiff was told it could take a week for the lab results and in the meantime to continue icing, elevating, and cleansing the knee.

On April 14, 2024, Plaintiff asked HSU in writing to have the continued use of his wheelchair for PT and getting his medication, due to his ongoing pain, swelling, and inability to walk long distances. On April 15, 2024, Plaintiff made a statement on a conduct report written by Burmeister regarding the use of his wheelchair. On April 15, 2024, at approximately 7:30 p.m., Plaintiff was walking with crutches to HSU for his medication when he fell, hit his knee, and suffered excruciating pain. Another inmate sought medical help. Plaintiff was told by a C.O. to stay on the floor until medical staff arrived to assist him. Barter arrived and asked Plaintiff, "are you laying down in protest?" to which Plaintiff responded, "No, I fell walking to HSU to take my medication." Barter said, "well, you've done this before so I had to ask," to which Plaintiff responded, "I only fell previously when my crutches were confiscated." Plaintiff explained that he had extreme pain in his knee. When asked why he was not in his wheelchair, Plaintiff explained that they repeatedly confiscated it and wrote him conduct reports for using it, so he had no choice.

On April 15, 2024, Plaintiff was instructed by HSU to continue his use of a wheelchair. Plaintiff wrote the Unit Manager telling her he fell trying to walk to HSU to get his medication after Burmeister had cited him for using his wheelchair and put his safety at risk. In response, Plaintiff received multiple retaliatory conduct reports. On April 16, 2024, Plaintiff wrote HSU about his continued pain and stated he was being punished for using the wheelchair and felt intimidated so he walked, which led to his fall and injury. He also complained that staff were ignoring his concerns.

During the time period of April 16 through 28, 2024, Plaintiff gave daily notices to individuals including Thompson, his unit supervisor, and the Warden that he was unable to get his nightly medication because he feared hurting himself without a wheelchair, but he was threatened with conduct reports if he used the wheelchair. He also provided notices that his inability to take his medications was hurting him emotionally and physically. On April 17, 2024, Thompson responded to Plaintiff's concerns, "that is fine-your decision." Thompson also told Plaintiff not to elevate his leg on the wheelchair, in conflict with instruction he had received from the doctor and physical therapist to elevate his leg to reduce the swelling.

On April 18, 2024, Hill told Plaintiff he would receive a conduct report if he brought his wheelchair into MOS during his physical therapy. Plaintiff asked to leave his wheelchair inside MOS to protect his legal materials in the wheelchair that related to his litigation against prison officials. Sgt. Hill refused. After Plaintiff explained to the physical therapist his pain symptoms, lack of medical care, taking of his wheelchair, and his recent fall, Plaintiff reluctantly left PT early in order to protect his legal papers. On April 19, 2024, Plaintiff wrote HSU that he could not have a follow-up appointment for his latest fall because of his continued pain.

Plaintiff was charged a co-pay for medical treatment on April 20, 2024, even though he was not treated. Upon information and belief, the co-pay was charged to deter Plaintiff from seeking further medical treatment and his complaining about violations by prison officials.

On April 21, 2024, Plaintiff was called to HSU but given nothing for his pain. On April 21, 2024, HSU approved Plaintiff's use of a wheelchair through May 15, 2024. On April 23, 2024, Plaintiff asked Sgts. Loehrke and Ralls for an HSU slip and to call HSU as he was in excruciating pain. Sgts. Loehrke and Ralls refused Plaintiff's request and told him to go to his room. Plaintiff wrote a request slip to Grenier and HSU explaining his excruciating pain. On April 24, 2024, HSU gave Plaintiff Aspercreme for his swollen knee. When Plaintiff pointed out the label warning not to use it on swollen areas, HSU instructed him to use it anyway.

On April 26, 2024, Andrea Smits, PA, told Plaintiff his x-ray showed a bone on his knee that was not supposed to be there but was expected to hopefully not be there in 2-3 months. Smits claimed it could be Osgood Schlatter's. Smits also advised Plaintiff to engage in more activities, which conflicted with the instructions from his PT. On April 30, 2024, Plaintiff informed a psychiatrist at HSU why he had not been able to take his medications and the resulting detrimental effects of depression, anxiety, sleep deprivation, and lack of focus.

During November 2024, Plaintiff filed a civil suit regarding deliberate indifference, negligence and retaliation against him by prison officials. On December 5, 2024, Hill issued Plaintiff a false conduct report in retaliation for his complaints and lawsuit against prison officials. On December 7, 2024, Castner issued Plaintiff a false conduct report in retaliation for his complaints and lawsuit against prison officials. On

December 13, 2024, Plaintiff was issued a false conduct report in retaliation for his complaints and lawsuit against prison officials. On March 4, 2025, Plaintiff was stopped and strip-searched by Sgt. Martin in retaliation for his complaints and lawsuit against prison officials.

Defendants' conduct described above has caused Plaintiff the unnecessary and wanton infliction of pain despite his persistent complaints to address the pain. Defendants' conduct described above intentionally disregarded a known, objectively serious medical condition that posed an excessive risk to Plaintiff's health, causing him pain, suffering, depression, anxiety, sleep deprivation, and lack of focus. Defendants' retaliation described above in response to Plaintiff's complaints and lawsuit regarding misconduct by prison officials, was intentional, and caused Plaintiff to suffer pain, suffering, depression, anxiety, sleep deprivation, and lack of focus.

### 2.3 Analysis

First, the Court finds that Plaintiff may proceed against Hall, Leibsle, Barter, Ralls, Loehrke, Thompson, and Durante on an Eighth Amendment deliberate indifference claim for their indifference to Plaintiff's serious medical need. The Eighth Amendment secures an inmate's right to medical care. Prison officials violate this right when they "display deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (internal quotation omitted). Deliberate indifference claims contain both an objective and a subjective component: the inmate "must first establish that his medical condition is objectively, 'sufficiently serious,'; and second, that prison officials acted with a 'sufficiently culpable state of mind,' i.e., that they both knew of and disregarded an excessive risk to inmate health." *Lewis v. McLean*, 864 F.3d 556, 562–63 (7th Cir. 2017)

(quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted)). "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). The length of delay that is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" *Id.* (quoting *McGowan*, 612 F.3d at 640).

At the screening stage, the Court finds that Plaintiff's allegations are sufficient to proceed against Hall, Leibsle, Barter, Ralls, Loehrke, Thompson, and Durante. Plaintiff alleges that he was denied a medically necessary wheelchair and getting adequate medical treatment for his knee pain. As such, Plaintiff may proceed against Hall, Leibsle, Barter, Ralls, Loehrke, Thompson, and Durante on an Eighth Amendment deliberate indifference claim for their indifference to Plaintiff's serious medical needs.

Second, the Court finds that Plaintiff may proceed on a First Amendment retaliation claim against Burmeister, Durante, Castner, Leibsle, Hill, Hall, and Martin. To prevail on a retaliation claim, Plaintiff must ultimately show that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014).

Here, Plaintiff alleges that these defendants retaliated against him for filing inmate complaints and civil rights lawsuits. It is well established that a prisoner's ability to file grievances is protected by the First Amendment. *See Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016). As for the

second element, Plaintiff alleges suffering deprivations—being denied his medically necessary wheelchair, receiving false conduct reports, and being strip-searched—that, we can infer, would likely dissuade a person of ordinary firmness from exercising further First Amendment activity. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). At the pleadings stage, the Court finds these allegations are sufficient to proceed on a First Amendment retaliation claim against Burmeister, Durante, Castner, Leibsle, Hill, Hall, and Martin.

Finally, the Court will allow Plaintiff to proceed on a state law negligence claim against Hall, Leibsle, Barter, Durante, Ralls, Loehrke, and Thompson. To sustain a claim for negligence, Plaintiff must allege "(1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages." *Paul v. Skemp*, 625 N.W.2d 860, 865 (Wis. 2001). Plaintiff alleges that these defendants were negligent for failing to provide his medically necessary wheelchair and in treating his knee pain. At this early stage, the Court will exercise its supplemental jurisdiction under 28 U.S.C. § 1367(a) and will allow Plaintiff to proceed on a state law claim of negligence against Hall, Leibsle, Barter, Durante, Ralls, Loehrke, and Thompson.

### 3. CONCLUSION

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Eighth Amendment claim against Hall, Leibsle, Barter, Ralls, Loehrke, Thompson, and Durante for their deliberate indifference to Plaintiff's serious medical needs.

**Claim Two:** First Amendment retaliation claim against Burmeister, Durante, Castner, Leibsle, Hill, Hall, and Martin.

**Claim Three:** State law negligence claim against Hall, Leibsle, Barter, Durante, Ralls, Loehrke, and Thompson.

Defendants should take note that, within forty-five (45) days of service of this Order, they are to file a summary judgment motion that raises all exhaustion-related challenges to the amended complaint. The Court will deny as moot Defendants' motion for partial summary judgment based on the exhaustion of administrative remedies. After any exhaustion issue is resolved, the Court will issue a scheduling order that embodies all other relevant deadlines.

Accordingly,

**IT IS ORDERED** that Defendants' motion for partial summary judgment, ECF No. 22, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendants shall file a responsive pleading to the amended complaint, ECF No. 41, within twenty-one (21) days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges to the amended complaint by filing a motion for summary judgment within forty-five (45) days of service; and

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the amended complaint, and Plaintiff should strongly consider filing a second amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*,

No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice.

Dated at Milwaukee, Wisconsin, this 16th day of June, 2026.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge